IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 23-05001-01-CR-SW-BP |
| | ) | |
| JAMES LIVINGSTON, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER AND OPINION (1) ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION AND (2) DENYING DEFENDANT'S MOTION TO SUPPRESS

Defendant has been charged with crimes arising from events on two different occasions. As relevant here, Counts II – IV are based on events occurring on January 6, 2023, and charge Defendant with one count each of (1) possessing 50 grams or more of methamphetamine with the intent to distribute, (2) possessing a machinegun in furtherance of a drug trafficking crime, and (3) being a felon in possession of a firearm. (*See* Doc. 33.) He filed a Motion to Suppress, (Doc. 53), contending that the evidence found on January 6, 2023, was obtained in violation of the Fourth Amendment. The Honorable David P. Rush, United States Magistrate Judge for this District, held a hearing on July 21, 2024, and thereafter issued a Report recommending that the Motion to Suppress be denied. (Doc. 53.) Defendant has filed objections to Judge Rush's Report and Recommendation ("the Report").

The Court has conducted a de novo review of the facts and law as required by 28 U.S.C. § 636(b)(1). In particular, the Court has reviewed the parties' submissions before the hearing, the transcript and exhibits from the hearing (including the footage from Officer Justin Gilmore's bodycam), and Defendant's objections. Having conducted this review, the Court adopts the Report

as the Order of the Court and denies the Motion to Suppress. The Court's discussion is intended to augment, not supplant, the Report's recommended findings and conclusions.

## I. BACKGROUND

On January 6, 2023, Officer Justin Gilmore of the Galena, Kansas Police Department (the "GPD"), passed an SUV driven by Defendant. The radar in Officer Gilmore's patrol car reflected Defendant was traveling 11 miles over the speed limit, so Officer Gilmore turned around to effectuate a traffic stop. Defendant turned onto State Line Road (which separates Missouri and Kansas) and headed North before pulling over. Thus, when he stopped, Defendant was on the East side of State Line Road – placing him just over the state line, in Jasper County, Missouri. In addition to Defendant, a female passenger was present in the front seat.

Officer Gilmore approached the driver's side of the SUV; instead of rolling down the driver's side window, Defendant lowered the rear door's window a few inches. Officer Gilmore then asked Defendant to open the driver's side door; Defendant asked several times why he had to do so, and Officer Gilmore explained he could not see Defendant through the darkened windows, and it was difficult to talk to him through the back window. Officer Gilmore had to repeat his instruction several times; after approximately 45 seconds, Defendant opened the door.

Officer Gilmore then asked Defendant to provide his license and proof of insurance, but he was reluctant to do so and had to be asked multiple times before he complied. While Officer Gilmore had not encountered Defendant previously, he recognized his name and knew him to be involved in narcotics and gang activity. He also knew him to be a felon. A check on Defendant's license confirmed this information. The license check also (1) indicated Defendant was known to be armed and dangerous and (2) revealed a possible warrant issued from Jasper County. The Jasper County Sheriff's Office was requested to respond to the location.

Officer Gilmore asked Defendant to exit the vehicle. Defendant did not immediately comply and continued (as Officer Gilmore put it) "messing around in" the vehicle and looking around. He also asked the officers to back away from the vehicle. During this time, Officer Gilmore asked Defendant multiple times if he had had any weapons on him or in the vehicle; Defendant denied having any, but his hesitations, demeanor, and manner caused Officer Gilmore to suspect he was lying. (Doc. 52, pp. 17-19.)

Defendant eventually (after almost eight minutes) exited and walked to the rear of the SUV with Officer Gilmore, who advised him of the possible warrant and explained he would be handcuffed. Officer Gilmore patted Defendant down to see if he had any weapons and felt an object in Defendant's pocket. He asked if what he felt were keys, and Defendant told him that it was a pipe. The pipe was removed from Defendant's pocket, and it was observed to have white residue in it. The officers also found a pill bottle containing a green substance. Defendant was then placed in the back of a patrol car to await a response from Jasper County.

Officer Gilmore next asked the passenger to get out of the car. Once the passenger was away from the vehicle, Officer Gilmore conducted a protective sweep of the SUV and found an AR-15-style rifle next to the gearshift, covered by a shirt. Officer Gilmore gave the firearm to other officers and then continued the sweep and eventually found (on the back seat) two black tactical backpacks. One contained a large quantity of what he believed to be (and was later determined to be) methamphetamine. The other backpack contained a large amount of money.

Officer Gilmore contacted his chief and his sergeant, and his sergeant contacted the Ozark Drug Enforcement Team ("ODET"). The GPD officers then secured the scene and waited until detectives with ODET arrived. Once they did, Officer Gilmore turned the scene over to them. The

warrant was eventually confirmed, and Defendant was arrested by Missouri officers and transported to the Jasper County Jail.

The firearm and drugs found during the search form the basis for Counts II – IV of the Superseding Indictment. Defendant filed a Motion to Suppress, arguing the search of the SUV was not a valid search incident to arrest or supported by reasonable suspicion. The Government argued (1) Officer Gilmore was permitted to conduct a protective sweep of the SUV because he had a reasonable suspicion that it contained weapons and (2) alternatively, the search was supported by probable cause to believe the SUV contained evidence of a crime or contraband.

In the Report, Judge Rush recommended that the Court deny the Motion to Suppress, essentially for the reasons advanced by the Government. Defendant objects; in discussing his objections, the Court will set forth additional facts as necessary.

## II. DISCUSSION

The Court agrees with the Report's conclusion that Officer Gilmore was permitted to conduct a protective sweep of the car. The Court begins its analysis by observing Defendant concedes Officer Gilmore was permitted to pull over the SUV, even though it was in Missouri. (Doc. 45, p. 4.) There is also no question that, upon pulling over the SUV, Officer Gilmore could require Defendant and his passenger to exit the vehicle, and did not need any particular degree of suspicion to do so. *E.g.*, *United States v. Oliver*, 550 F.3d 734, 737 (8th Cir. 2008); *United States v. Linkous*, 285 F.3d 716, 719 (8th Cir. 2002); *see also Arizona v. Johnson*, 555 U.S. 323, 331 (2009).

Moreover, "[a] law-enforcement officer is . . . justified in making a limited, warrantless search for the protection of himself or others nearby in order to discover weapons if he has a reasonable, articulable suspicion that the person may be armed and presently dangerous." *United*

4

*States v. Roggeman*, 279 F.3d 573, 577 (8th Cir. 2002) (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1967)); *see also United States v. Scott*, 818 F.3d 424, 431 (8th Cir. 2016). A protective sweep's scope may extend not only to the person but to the car as well; in fact, "it is settled that once reasonable suspicion is established, a protective search of a vehicle's interior is permissible regardless of whether the occupants have been removed from the vehicle." *United States v. Stewart*, 631 F.3d 453, 457 (8th Cir. 2011); *see also Scott*, 818 F.3d at 432 (citing *Stewart*); *United States v. Bell*, 480 F.3d 860, 864 (8th Cir. 2007). Thus, Officer Gilmore could lawfully conduct a protective sweep of the SUV if he had a reasonable suspicion that Defendant had a weapon or one was in the vehicle, even though Defendant had already been handcuffed and placed in a patrol car.

The Court has little difficulty concluding that Officer Gilmore had reasonable suspicion to believe that Defendant was armed or that a weapon was in the SUV. "The level of suspicion necessary to constitute reasonable suspicion . . . is considerably less than proof of wrongdoing by a preponderance of the evidence and is obviously less demanding than that for probable cause." *United States v. Roggeman*, 279 F.3d 573, 578 (8th Cir. 2002) (quotations omitted). Here, reasonable suspicion existed based on (1) information that Defendant was known to be violent, (2) Defendant's unwillingness to lower the driver's side window or door, (3) Defendant's unwillingness to get out of the vehicle, (3) Defendant's insistence that officers move away from the vehicle before he exited, and (4) Defendant's demeanor and hesitant responses when responding to Officer Gilmore's questions and directions, particularly as related to questions about whether he was armed. Having viewed the video, the Court finds Defendant's behavior readily justified Officer Gilmore's suspicion that Defendant was lying when he said he did not have a weapon.

Defendant argues that Officer Gilmore was required to, and the Court should, consider other facts that he believes suggest he was not dangerous. Those facts include: (1) Defendant stopped the SUV "at a reasonable time and place", (2) Defendant was "conversational with the officer" and explained why he was speeding, (3) Officer Gilmore allowed Defendant to talk to his sister on the phone, (4) other facts confirmed he was simply delivering money to his sister to prevent repossession of her vehicle, and (5) Defendant allowed himself to be patted down, handcuffed, and placed in the patrol car without incident. (Doc. 61, p. 7.) As stated earlier, the totality of the circumstances must be considered; however, the additional facts Defendant cites do not detract from the Court's conclusion that other specific and articulable facts provided Officer Gilmore with reasonable suspicion to believe Defendant was armed.

Defendant also argues that Officer Gilmore exceeded the permissible scope of a protective sweep because he opened and searched a cigarette package he found on the floor of the SUV. (Doc. 61, p. 8.) But even if this contention is correct, it would only justify suppressing evidence found inside the cigarette package—and there is no such evidence.[1]

### III. CONCLUSION

The Court adopts the Report and Recommendation, (Doc. 64), augmented by the discussion above. Defendant's Motion to Suppress, (Doc. 53), is **DENIED**.

**IT IS SO ORDERED.**

/s/ Beth Phillips
BETH PHILLIPS, CHIEF JUDGE
DATE: December 9, 2024              UNITED STATES DISTRICT COURT

---

[1] The Court's analysis makes it unnecessary to consider Defendant's arguments regarding Officer Gilmore's authority to conduct an arrest in Missouri, to conduct a search incident to arrest in Missouri, or to conduct a search based on probable cause in Missouri. There is no dispute that Officer Gilmore was permitted to conduct the traffic stop in Missouri, so he was permitted to conduct a protective sweep during the stop.